6 P.3d 416

**STATE of Idaho, Plaintiff–Respondent.**

v.

**Thomas Daniel EVANS, Defendant–Appellant.**

**No. 25493.**

Court of Appeals of Idaho.

July 14, 2000.

Brian E. Elkins, Ketchum, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHWARTZMAN, Judge.

Thomas Daniel Evans appeals from the district court's opinion reversing the magistrate's order granting his motion to suppress evidence. We affirm the opinion of the district court reversing the magistrate's decision and remand the case for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 1998, at about 7:20 p.m., Ketchum police officer Adam Johnson observed a red Pontiac Firebird approaching an intersection. The Firebird's lights were on, but only one headlight was in working condition. Johnson pulled to the side of the road to see what direction the Firebird would take. After the Firebird proceeded past Johnson's patrol car, Johnson followed the automobile to an area where a traffic stop could be safely conducted. There, he activated his emergency lights and stopped the Firebird.

When Johnson approached the driver, later identified as Evans, Johnson could smell alcohol on his breath. Johnson told Evans that he had been pulled over because one of his headlights was out. After having Evans perform field sobriety tests, Johnson arrested him for DUI. Breath testing indicated a blood alcohol concentration of .19–.20 percent, well over the legal limit. I.C. § 18–8004(1)(a).

Evans filed a motion to suppress any evidence relating to his intoxication, asserting that Johnson had stopped his vehicle without reasonable suspicion of unlawful activity. At the suppression hearing, Johnson testified to the facts above. Johnson also testified that he was driving with his patrol car's headlights on at the time he stopped Evans because it was sufficiently dark that evening. Johnson did not recall when the sun set that day or whether all other vehicles on the road also had their lights on. Evans did not testify at the suppression hearing. The court took judicial notice that in Ketchum, Idaho, sunset occurred at 7:53 p.m. on September 12, 1998.

Counsel for Evans argued that I.C. §§ 49–902, 49–903 and 49–905 do not require headlights to be in working condition before sunset. The magistrate agreed, explaining that Evans' vehicle was properly equipped with headlights, only that one was not working or illuminated prior to the stop at 7:20 p.m., which was prior to sunset and therefore not a violation of the Idaho Code. Thus, the magistrate granted Evans' motion to suppress evidence in the DUI case for lack of reasonable suspicion of wrongdoing to justify the stop of Evans' vehicle.

The state appealed to the district court. The district court reversed the magistrate's decision, ruling that Johnson had probable cause to stop Evans because it is unlawful to drive with only one operable headlight. Evans appeals. We affirm.

## II.

## STANDARD OF REVIEW

### A. Standard On Review From The District Court Acting In Its Appellate Capacity

██ When this Court reviews an intermediate appellate decision of the district court, we examine the record that was before the magistrate. We will review the district court's decision and order for any useful insights; however our focus is on the magistrate's decision and the record upon which it was based. *State v. Doe*, 130 Idaho 811, 814, 948 P.2d 166, 169 (Ct.App.1997); *State v. Carr*, 128 Idaho 181, 183, 911 P.2d 774, 776 (Ct.App.1995); *State v. Hardman*, 120 Idaho 667, 668, 818 P.2d 782, 783 (Ct.App.1991).

**B. Standard Of Review From An Order On A Motion To Suppress**

■ Ordinarily, in reviewing a ruling on a motion to suppress, we employ a bifurcated standard. *State v. Abeyta*, 131 Idaho 704, 708, 963 P.2d 387, 391 (Ct.App.1998). We accept the trial court's findings of fact that are supported by substantial evidence and "freely review the application of constitutional principles to the facts as found." *Id.* Here, neither party disputes the facts presented at the hearing on the motion to suppress. Thus, we exercise free review in determining whether the police encounter was one permitted under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *See State v. Pick*, 124 Idaho 601, 604, 861 P.2d 1266, 1269 (Ct.App.1993).

### III.

### DISCUSSION

■ A traffic stop by an officer constitutes a seizure of the vehicle's occupants, necessarily implicating the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660, 667 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App.1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is articulable and reasonable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628 (1981); *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct.App.1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Naccarato*, 126 Idaho 10, 12, 878 P.2d 184, 186 (Ct.App.1994). The reasonable suspicion standard requires less than probable cause, but more than mere speculation or instinct on the part of the officer. *Id.*

Evans contends that Johnson lacked a legal justification to stop his vehicle because, according to his reading, I.C. § 49–903 only requires that a vehicle's headlights be illuminated after sunset or when there is not sufficient light to clearly distinguish persons and vehicles. Evans argues that I.C. § 49–903 does not require that headlights be operable at any other times. Therefore, he contends that the fact that one of his vehicle's headlamps was inoperable at 7:20 p.m., thirty-three minutes before sunset, did not give rise to reasonable suspicion of wrongdoing to justify Johnson's initiation of a traffic stop.

■ The instant case involves the meaning of and interaction among several statutes: I.C. §§ 49–902(1), 49–903 and 49–905. We exercise free review in questions of statutory construction. *State v. Nunes*, 131 Idaho 408, 409, 958 P.2d 34, 35 (Ct.App.1998) (citing *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990)). In construing these statutes, we must attempt to give effect to the intent of the legislature. *Nunes*, 131 Idaho at 409, 958 P.2d at 35. Legislative intent is determined by the plain language of the statute. *Id.* When a statute is clear and unambiguous, it must be interpreted in accordance with its language, courts must follow it as enacted, and a reviewing court may not apply rules of construction. *State v. Dewbre*, 133 Idaho 663, 665–66, 991 P.2d 388, 390–91 (Ct.App.1999); *State v. Schumacher*, 131 Idaho 484, 485, 959 P.2d 465, 466 (Ct. App.1998).

Idaho Code §§ 49–902(1) and 49–905 describe the condition of equipment that must be on a vehicle under Idaho law. Idaho Code § 49–902 states in pertinent part that:

> (1) *It shall be unlawful for any person to drive,* or move, or for the owner to cause or knowingly permit to be driven or moved *on any highway any vehicle* or combination of vehicles which is in an unsafe condition as to endanger any person, or *which does not contain those parts or is not at all times equipped with the lamps and other requirements in proper condition and adjustment, as required by the provisions of this chapter,* or which is equipped in any manner in violation of the provisions of this chapter.

(Emphasis added.) The plain language of this act requires that the "lamps and other

requirements" be "at all times ... in proper condition and adjustment." However, Evans argues that the succeeding clause, "as required by the provisions of this chapter" is a limitation on the preceding clause requiring that vehicles be "at all times equipped with the lamps and other requirements in proper condition and adjustment." He argues that I.C. § 49–903 is the section setting forth the time when headlights must be operable.

▮ Idaho Code § 49–903 provides as follows:

> Every vehicle upon a highway at any time from sunset to sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred (500) feet ahead shall display lighted lamps and illuminating devices as here respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles as stated herein.

By its plain language, this section only states when headlights must be turned on. This statute does not authorize the operation of vehicles with inoperable headlights on Idaho highways. For numerous reasons, operable headlights may be unexpectedly required long before sunset: sudden changes of weather; agricultural dust; smoke from burning fields or forest fires to name a few. We therefore conclude that Evans' reading of I.C. § 49–903 as permitting the operation of vehicles with inoperable headlights before sunset is inconsistent with Idaho's policy of providing a safe highway system.

▮ The statutes making up Chapter 9 of Title 49 concern the same subject matter— the specific type and condition of equipment on motor vehicles. These statutes refer to one another and must be read in light of these references. In construing the meaning of these statutes, we are mindful of the principal rule governing statutory interpretation. "Statutes must be interpreted to mean what the legislature intended for the statute to mean." *State v. Paul*, 118 Idaho 717, 718–19, 800 P.2d 113, 114–15 (Ct.App.1990). Statutes which are in *pari material*—of the same

subject matter—are to be construed together, so as to further the legislative intent. *Id.*

▮ Idaho Code § 49–905 provides:

(1) Every motor vehicle other than a motorcycle or motor-driven cycle shall be equipped with at least two (2) head lamps with at least one (1) on each side of the front of the motor vehicle. *The head lamps shall comply with the requirements and limitations set forth in this chapter.*

. . .

(7) Any person convicted of a violation of the provisions of this section shall be guilty of an infraction.

(Emphasis added.) This section plainly refers back to other sections setting forth more specific requirements for head lamps. Looking at these more specific sections, we note, again, that Idaho Code § 49–903 only governs when headlights must be turned on. Idaho Code § 49–902(1) specifies the condition of the equipment, including head lamps. The plain meaning of "in proper condition and adjustment" is in proper working order. Accordingly, when Johnson saw that one of the Firebird's headlights was on while the other was not, he had reasonable cause to believe Evans was operating a vehicle in violation of Idaho Code § 49–902(1), which is an infraction pursuant to Idaho Code § 49–905.

## IV

### CONCLUSION

We conclude that Evans' operation of the Firebird with a broken headlight provided a basis for reasonable suspicion of an infraction. Accordingly, we affirm the decision of the district court reversing the magistrate's order granting Evans' motion to suppress and remand the case to the trial court for further proceedings.

Chief Judge PERRY, and Judge LANSING concur.